**Spencer Fane LLP**
Richard F. Holley, Esq.
Nevada Bar No. 3077
rholley@spencerfane.com
R. McKay Holley, Esq.
Nevada Bar No. 15964
mholley@spencerfane.com
300 South Fourth Street, Suite 950
Las Vegas, Nevada 89101-6019
Telephone:     702.408.3400
Facsimile:     702.408.3401
-and-
David M. Miller (CO Bar No. 17915)
*Pro Hac Vice* Pending
dmiller@spencerfane.com
1700 Lincoln Street, Suite 2000f
Denver, Colorado 80203
Telephone:     303.839.3800
Facsimile:     303.839.3838

Attorneys for
Client Name U.S. Eagle Federal Credit Union

## UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| In re:<br><br>FUTURE LEGENDS 5, LLC,<br><br>Debtor. | Case No. 24-51031-hlb<br>Chapter 11<br><br>HEARING DATE: OST Pending<br>HEARING TIME:  OST Pending<br><br>Judge:  Hon. Hilary L. Barnes |

### EMERGENCY MOTION OF U.S. EAGLE FEDERAL CREDIT UNION FOR TRANSFER OF VENUE PURSUANT TO U.S.C. § 1412 AND FED. R. BANKR. P. 1014(a)(1)

U.S. Eagle Federal Credit Union ("U.S. Eagle"), first lienholders on real estate purportedly owned by the above-captioned debtor and debtor-in-possession Future Legends 5, LLC (the "Debtor"), by and through its counsel Spencer Fane LLP, hereby moves this Court on an Emergency Basis for an Order transferring venue in this case to the United States Bankruptcy Court for the District of Colorado pursuant to 28 U.S.C. § 1412 and Fed. R. Bankr. P. 1014(a)(1). In support thereof, U.S. Eagle respectfully states as follows:

# I.    **BACKGROUND**

1.    The Debtor filed its voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code ("Case") on October 14, 2024 ("Petition Date"), and it remains a debtor-in-possession.  The Debtor filed no supporting statements or schedules on the Petition Date.

2.    This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This Motion is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A) and (O).  The statutory predicates for the relief requested in the Motion are 28 U.S.C. § 1412 and Fed. R. Bankr. P. 1014(a)(1).

3.    The Debtor, Future Legends 5, LLC, was formed in and is a Nevada Limited Liability Company, which is its only tie to the state, other than having retained counsel in Nevada for the purpose of initiating this Case.

4.    The principal of the Debtor, Jeff C. Katofsky ("Katofsky"), is a licensed and experienced California attorney, who also serves as principal of the Debtor, as well as Future Legends, LLC ("Future Legends"), Future Legends 1, LLC ("Future Legends 1"), and Future Legends 4, LLC ("Future Legends 4") (collectively "Future Legends Entities"), among other iterations of the Future Legends moniker.  These Future Legend Entities are embroiled in heated mechanics lien, foreclosure, and receivership litigation far from this jurisdiction and located in Weld County, Colorado. It is there that the Future Legend Entities' assets are located and it is there that this Debtor asserts to own property rights.  Upon information and belief, the Debtor conducts no business in the state of Nevada and its only tie to the State is that it is a Nevada entity.

5.    Through his Future Legend Entities, Katofsky owns and operates real property that generally consists of a sports complex located in Windsor, Colorado ("Complex").  In addition to hosting youth sports tournaments, events, and activities, the Complex is intended to be and is the home to minor league baseball and soccer teams. It is impressive in scope, and contains a large, inflatable dome, a stadium, a clubhouse, and dormitory, all in various states of completion.

SPENCER FANE LLP
Attorneys at Law
Las Vegas

LV 6696609.1

6.      The Future Legends' Complex website[1] represents itself as follows: "*Located in Windsor, CO, Future Legends is a premium multi-sport complex dedicated to the stars of tomorrow*." The Future Legends' Complex website also boasts that the Complex includes 10 baseball diamonds, 12 soccer pitches, and a 64-team dorm.

7.      Per the Future Legends' Complex website, the Dome is ten (10) stories high and one of the three largest multi-sport domes in the world. The Dome is large enough to accommodate one (1) full size soccer field, or two (2) youth baseball fields, 16 regulation volleyball courts, or eight (8) regulation basketball courts. The Dome connects to the Clubhouse, which is a two (2) story bar and restaurant.

### The Loans from U.S. Eagle and Ownership of the Dome Property

8.      U.S. Eagle is the senior lender on the Project.  It has made six (6) secured loans to the Debtor's affiliates - Future Legends, Future Legends 1, and Future Legends 4.  The amount due on those loans exceeds 34 million dollars. Three (3) of those loans are partially guaranteed by the United States Department of Agriculture ("USDA"), and all loans have been personally guaranteed by Katofsky and the Katofsky Family Trust.  Of those six (6) loans, three (3) pertain to the Dome Property. As of August 30, 2024, the amounts due and owing on those three (3) loans totaled $18,827,594.15 as follows:

| Loan Number | Borrower | Guarantors | Amount Due (August 30, 2024) |
|---|---|---|---|
| 6610721-0001 | Future Legends LLC | Jeff C. Katofsky; Katofsky Family Trust; U.S. Department of Agriculture | $13,760,382.64 |
| 6610721-0002 | Future Legends LLC | Jeff C. Katofsky; Katofsky Family Trust; U.S. Department of Agriculture | $462,971.30 |
| 6610721-0003 | Future Legends LLC | Jeff C. Katofsky; Katofsky Family Trust | $4, 604,240.21 |
| | | | **Total: $18,827,594.15** |

---

[1] The Future Legends website can be found at https://futurelegendscomplex.com/

SPENCER FANE LLP
Attorneys at Law
Las Vegas

LV 6696609.1

9. Contrary to the Debtor's shocking misrepresentations in this Case and the State Court Litigation as described hereinbelow, Future Legends is the owner of the real property and Dome located thereon having an address of 1090 Future Legends Drive, Windsor, Colorado 80550 ("Dome Property"), not the Debtor.

10. As set forth in the deed records of Weld County, Colorado, Future Legends became the owner of the Dome Property pursuant to a Colorado General Warranty Deed dated May 28, 2019, which was recorded with the Clerk and Recorder of Weld County on June 14, 2019 at 4497549. A copy of the Warranty Deed is attached hereto as Exhibit 1.

11. The first loan made by U.S. Eagle to Future Legends occurred in October 2021. In connection therewith, Future Legends granted to U.S. Eagle a Deed of Trust, Secured Agreement, Financing Statement and Assignment of Rents on the Dome Property, which was recorded in the Deed Records of Weld County on November 2, 2021, at Reception No. 4772120 ("First Deed of Trust").

12. Thereafter, and in connection with each of the second and third loans, Future Legends similarly granted to U.S. Eagle an additional Deed of Trust, Secured Agreement, Financing Statement and Assignment of Rents on the Dome Property which were recorded in the Deed Records of Weld County on June 20, 2023 at Reception No. 4904629, and on September 26, 2023, at Reception No. 4922469, respectively (together, the three (3) Deeds of Trust and jointly referred to as the "Deeds of Trust"). Copies of the three (3) Deeds of Trust are attached hereto as Exhibit 2.

**The State Court Receiver**

13. After a panoply of construction disputes, acrimony with the Town of Windsor, voluminous, heated, and fulsome mechanics lien litigation, loan defaults, failures to pay urgent utility bills, failures to carry insurance, misrepresentations and general gross mismanagement, U.S Eagle petitioned for, and the Weld County District Court appointed a state court receiver to operate the Future Legends Project. Mr., Michael Staheli of Cordes & Company, P.C. is the Court-appointed Receiver ("Receiver").

14.     During the course of the Receiver's investigation, Katofsky and his legal team disclosed that, in violation of its loan covenants and obligations due to U.S. Eagle, and in May of 2022, Future Legends claims to have conveyed the Dome Property of the Future Legends Project to the Debtor.  The deed evidencing this purported transfer has never been recorded.[2] Even so, and despite the fact that (i) the First Deed of Trust was recorded well before the alleged conveyance occurred; and (ii) that after the alleged conveyance, U.S Eagle funded two more loans to Future Legends, which represented in the loan documents that it owned the Dome Property and it then executed the second and third Deeds of Trust, further encumbering the Dome Property in favor of U.S .Eagle, the Debtor now claims to own the Dome Property by virtue of that sham transaction.

15.     Katofsky also disclosed to the Receiver that on August 1, 2024, months after Future Legends, Future Legends 1, and Future Legends 4 had all been declared in default under their various loans with U.S. Eagle, the Debtor (as landlord) entered into a long -term lease with Future Legends (as tenant) ("Lease").  While the existence of the insider Lease came as a shock to no one's surprise, Katofsky executed the Lease on behalf of both parties.  A copy of the Lease is attached hereto as Exhibit 3.

16.     The execution of the Lease, which Future Legends allegedly executed while awaiting U.S. Eagle's first responsive pleading in the State Court Litigation (which required U.S. Eagle to assert all mandatory counterclaims in response to a junior foreclosing mechanics' lien claimant), was clearly a strategic effort executed by an experienced attorney (Katofsky), to aid in his quest to insulate the Dome Property from the anticipated Counterclaims and foreclosure suit which is now pending as a part of the State Court Litigation.

17.     In pertinent part, the Lease provides that:

- The rent of $50,000.00 per quarter is paid in arrears (Lease Agreement p. 1);
- All utilities are the obligation of Future Legends (*Id.* at Art. 7);
- Future Legends shall carry various types of insurance, including commercial general liability insurance (*Id.* at Art. 8(C));

---

[2] Future Legends 5 was not named as an entity for whom the receiver should be appointed because U.S. Eagle did not know that the Debtor asserted an ownership interest in the Future Legends Complex.

SPENCER FANE LLP
Attorneys at Law
Las Vegas

LV 6696609.1

- The lease is and shall automatically be subject and subordinate to all present and future mortgages and deeds of trust and to all renewals, modifications, consolidations, replacements and extensions thereof (*Id.* at Art. 26(A); and
- Future Legends hereby attorns and shall attorn to any Person . . . acquiring the Premises or the real property thereunder . . . pursuant to the exercise of any rights, *powers,* or remedies under a mortgage or deed of trust as if such Person had been named Landlord herein, . . . . (*Id.* at Art. 26(B).

18.     Upon receipt of the Lease, the Receiver requested that Future Legends provide it any documentation showing the Debtor's interests with respect to Dome Property. The Receiver received in return a copy of a Purchase Agreement dated May 1, 2022 ("Purchase Agreement"). A copy of the Purchase Agreement is attached hereto as <u>Exhibit 4</u>.

19.     The Purchase Agreement contemplated a future closing in which Future Legends would deed the Dome Property to Future Legends 5, but no such Deed appears in the public records of Weld County. Critically. Notably, the Purchase Agreement post-dates U.S. Eagle's First Deed of Trust upon the Dome Property.

20.     The Receiver swiftly determined the Lease was a sham, was for below-market rent (payable in arrears), and that the Debtor had already breached its terms, by virtue of its failure to carry the required insurance required by the Lease.[3]  As a result, the Receiver filed in the State Court Suit an Emergency Motion To Reject Lease ("Emergency Motion").  A copy of the Emergency Motion is attached hereto as <u>Exhibit 5 </u>(without exhibits, attached hereto separately).

21.     In response to the Emergency Motion, Debtor filed its Petition in this Court at 6:08 p.m. on the evening of October 14 ,2024, the evening before the Receiver's Emergency Motion was to be considered in the State Court Litigation.  Notwithstanding this fact, the Debtor opted to wait until moments before the hearing the next morning (at 9:00 a.m. Mountain time) to apprise the State Court and parties in interest of the existence of this Case.

---

[3] The Receiver's Emergency Motion advised the State Court of the danger which Katofsky allowed to befall the Project, as a result of the sham Lease and lack of insurance, stating " Accordingly, Future Legends has been hosting daily sporting even in the Dome Property, attended by hundreds of children, teenage and adult participants and spectators for the past two months *without property insurance and general liability insurance coverages in place for protection of all parties*. Emergency Motion, ¶ 15 (emphasis added).

- 6 -

22.     As a result of the imposition of the automatic stay requirements of 11 U.S.C. § 362(a) and respecting its mandate, the State Court stayed consideration of the Emergency Motion.

23.     All Future Legends Entities are represented by the same counsel – Debtors' counsel.

24.     Last week and on October 10, 2024, the Receiver also filed his First Status Report with the Court.  A copy of that Status Report is attached hereto as <u>Exhibit 6</u>.  The Report recites a litany of issues which exemplify the mismanagement which exist at the Future Legends Project, all occurring under Katofsky's "stewardship".

25.     The State Court Litigation consists of three (3) now-consolidated lawsuits which started when an unpaid vendor sued to foreclose its mechanics lien pursuant to Colorado law.  The State Court Litigation has since morphed into a situation where there are, at present, over 38 parties thereto. Evidencing the number of parties involved in the pending State Court Litigation, a copy of the captions in each of the now-consolidated cases is attached hereto as <u>Exhibit 7</u>.

26.     The Debtor has not filed its required statements and schedules and has requested the Court extend the time for it to perform its duties.

27.     The Debtor and the Future Legends Entities are under scrutiny not only by its creditors, but also by the public in Colorado.  Its actions, including this Case filing, receive regular newspaper and television coverage in Northern Colorado and the Denver Metropolitan area. Television news stories covered this Case filing.[4]

28.     Meanwhile, knowing the Debtor is far afield from its creditors, potential witnesses, and adverse publicity, it filed its Case in Nevada.  As the Debtor hoped, it did not register on the radar of anyone in the public or Nevada media that there was any significance to the filing of the fancy sounding "Future Legends 5, LLC" Chapter 11 case.  Back home, where this Case should lie, everyone knows of the debacle caused by the Future Legends entities and its principal.

---

[4]     https://www.denver7.com/news/front-range/windsor/developers-of-windsors-future-legends-sports-complex-file-for-bankruptcy

## II.    **STANDARDS AND ARGUMENT**

29.    U.S. Eagle seeks entry of an order transferring venue of the Case from the United States Bankruptcy Court for the District of Nevada to the United States Bankruptcy Court for the District of Colorado ("Colorado Court") pursuant to 28 U.S.C. § 1412 and Fed. R. Bankr. P. 1014(a)(1).

30.    28 U.S.C. § 1408 provides for bankruptcy court venue in the district in which "domicile, residence, principal place of business…, or principal assets..." of the debtor exists during the 180- period before the case is commenced. 28 U.S.C. § 1408(1).

31.    Pursuant to 28 U.S.C. § 1412, a district court "may transfer a case or proceeding under title 11 to a district court for another district, in the interest of justice or for the convenience of the parties."

32.    Federal Rule of Bankruptcy Procedure 1014, which addresses the procedure for change of venue in bankruptcy cases, provides:

> (a) Dismissal and Transfer of Case
>     (1) Cases Filed in Proper District.  If a petition is filed in the proper district, the court, on the timely motion of a party in interest or on its own motion, and after hearing on notice to the petitioners, the United States trustee, and other entities as directed by the court, may transfer the case to any other district if the court determines that the transfer is in the interest of justice or for the convenience of the parties.

33.    The party challenging venue bears the burden of proving improper venue by a preponderance of the evidence, and venue is presumed to be proper in the district where the debtor filed for bankruptcy protection. *In re Consolidated Equity Properties, Inc.,* 136 B.R. 261, 262-63 (D. Nev. 1991); *In re Handel,* 253 B.R. 308, 310 (1st Cir. BAP 2000).

34.    As determined in *In re Municipal Corrections, LLC*, 2012 WL 6737509 (Bankr. D. Nev. Dec. 28, 2012):

> [T]he determination as to venue is fact-specific,' " *B.L. of Miami,* 294 B.R. at 328–29 (quoting *Consol. Equity Prop., Inc. v. Southmark Corp. (In re Consol. Equity Prop., Inc.),* 136 B.R. 261, 266 (D.Nev.1991)), and 'is within the court's discretion based on an individualized case-by-case analysis of convenience and fairness.' *B.L. of Miami,* 294 B.R. at 328–29 (quoting      *In re Enron,* 284 B.R. at 386). '[An] elastic approach is necessary because venue

- 8 -

SPENCER FANE LLP
Attorneys at Law
Las Vegas

does not easily submit to hard and fast rules.' *B.L. of Miami,* 294 B.R. at 328–29 (quotation omitted).

*In re Municipal Corrections, LLC*, at *4 (quoting *In re B.L. of Miami, Inc.,* 294 B.R. 325, 328 (Bankr. D. Nev. 2003).

35.     Pursuant to the statute, the Court analyzes a request for change of venue either for the convenience of the parties, in the interests of justice, or both.  The test for venue transfer is specific to the grounds upon which a motion is based.

**A.     VENUE SHOULD BE TRANSFERRED FOR THE CONVENIENCE OF THE PARTIES.**

36.     When considering a change of venue based upon the convenience of the parties, courts consider at least six factors, to wit:

> 1. proximity of creditors of every kind to the court;
> 2. proximity of the debtor;
> 3. proximity of witnesses necessary to the administration of the estate;
> 4. location of the assets;
> 5. economic administration of the estate; and
> 6. necessity for ancillary administration if liquidation should result.

*In re B.L. of Miami, Inc.*, 294 B.R. at 329.

**1.     Proximity of Creditors to The Court.**

37.     When the vast majority of creditors reside in an alternative forum, the transfer of venue to that forum is appropriate.  *See In re Rehoboth Hosp., LP*, No. 11-12798 KG, 2011 WL 5024267, at *3 (Bankr. D. Del. Oct. 19, 2011) (transferring venue to Texas where "the overwhelming majority, in number, of the remaining secured and unsecured creditors are located in Texas"); *In re Grand Dakota Partners, LLC*, 573 B.R. 197, 202 (Bankr. W.D.N.C. 2017) (transferring venue where '[t]he vast majority of the Debtors' creditors (including counterparties to executory contracts) are located in North Dakota where the Hotel is operated. Trade creditors in North Dakota likely would bear substantial hardship traveling to defend their claims in North Carolina. . . . North Dakota would be the best place for the overwhelming majority of the Debtors' creditors and contract counterparties to participate in these two bankruptcy cases."); *In re Pavilion Place Assocs.*, 88 B.R. at 35; *compare with In re Great Am. Res., Inc.*, 85 B.R. 444, 446 (Bankr.

SPENCER FANE LLP
Attorneys at Law
Las Vegas

- 9 -

N.D. Ohio 1988) (overruling motion to transfer venue where only 3% of the dollar value of liquidated unsecured claims of the debtor were owed to entities with business addresses in the district in which the movant sought to transfer venue and where "the number of unsecured creditors located within th[e] judicial district [wa]s negligible.").

38.    In *B.L. of Miami* and reviewing the list of the 20 largest unsecured creditors present in that matter, the court concluded that "[T]his factor must be analyzed as to both the number of creditors and the amounts of their claims.... Both number and size are of equal significance in gaining acceptance of a plan and should be of equal significance in considering the convenience of the creditors." *B.L. of Miami,* 294 B.R. at 330 (internal citations omitted).

39.    In the case at bar, not one creditor listed on the Debtors' List of 20 Largest Unsecured Creditors has a Nevada mailing address. <u>See</u>, Docket No. 3.

40.    The Debtor's List of 20 Largest Unsecured Creditors reveals that most, if not all, such creditors possess claims related to the Project, and twelve (12) of them have specific Colorado addresses.  Five (5) others listed below are known to have ties to and debts related to the Project.

> (i) Brightview Landscape Development is the named Plaintiff in one of the now-consolidated State Court Litigation cases;
>
> (ii) Xcel Energy is owed significant amounts as a utility provider at the Project site, because of non-payment by Future Legends[5]
>
> (iii) Comcast is owed services at the Project;
>
> (iv) Amazingly, the Town of Windsor (Colorado) is misstated as somehow receiving notice of the case filing in in <u>Gretna, Nebraska</u>. Windsor is the entity threatening to revoke the Future Legends Temporary Certificates of Occupancy for its failures to meet basic health and safety requirements;
>
> (v) Kone Elevators is a vendor of Future Legends; and
>
> (vi) Ram Waste, Inc. provided waste services at the Project.

<u>See</u>, Docket No. 3.

---

[5] When Future Legends failed to pay Xcel, it posted a same day disconnect notice at the Dome.  A loss of power and subsequent deflation of the Dome would have voided its warranty.  U.S. Eagle was required to make an emergency protective advance in the amount of $_____ to keep the Dome inflated to avoid that potentially catastrophic consequence.  Prior thereto, Future Legends, through Debtor's counsel, falsely represented to U.S. Eagle that it was current on its utility bills.

SPENCER FANE LLP
Attorneys at Law
Las Vegas

41.    Of the three remaining creditors, Harmony Suites is listed without an address, Nebulosity appears to be a software vendor, and it is unknown what ties it or Unique Funding Solutions, LLC have to the Project.  One thing is clear though, none of the creditors have ties to Nevada.

42.    The total amount of debt listed in the List of 20 Largest Unsecured Creditors is $6,457,428.94.  At least ninety percent (90%) of the top twenty unsecured creditors representing $5,382,428.94 in claims, have debts directly related to the Project or are located in Colorado (18 of 20).  This factor weighs heavily in favor of transferring venue of this Case to the Colorado Bankruptcy Court.

**2.    Proximity Of The Debtor.**

43.    The Debtor isn't even located in Nevada.  It claims on its Petition that its principal place of business is in Sherman Oaks, California.  <u>See</u>, Docket No. 1.  While Katofsky may reside in California and that address is where he maintains an office, the Debtor surely does not conduct any business in either state.  Rather, its operations are resident in Colorado, where the Project and its purported real property ownership interest are both located.

44.    Debtor has no Nevada staff or Nevada operations.  The Petition discloses the Debtor's Nevada mailing address as being "Cogency Global, Inc., 321 W. Winnie Lane, #104, Carson City, NV 89703."  But the Cogency Global, Inc. location is nothing more than a paid mailing address.  Under the header "what we do", its website discloses, that among other services, it provides registered agent services (https://www.cogencyglobal.com/contact-us-cogency-global).  The Debtors' use of that mailing address does not bolster a claim for venue to remain in Nevada.  On the contrary, this factor strongly weighs in favor of transferring venue**.**

**3.    Proximity of Witnesses Necessary to the Administration of the Estate.**

45.    This factor cries out for a venue change to Colorado.  Unquestionably, no witness who has information regarding the Project or estate administration is physically located in Nevada.  And as argued below, given the limited 100-mile reach of the Court's subpoena power, none of them could be compelled to appear in this Case to provide testimony.  Even Mr. Katofsky's office in Sherman Oaks, California is roughly a five (5) hour drive away from the Court (roughly 300

SPENCER FANE LLP
Attorneys at Law
Las Vegas

LV 6696609.1

miles).  On the other hand, Windsor, Colorado is approximately 802 miles from the Courthouse steps, just as the Debtor intended.  Venue must be transferred to Colorado given these fact**).**

### 4.    Location of the Assets.

46.    As is evident, the Debtor has no assets resident in this forum. Instead, to the extent it has any, its assets are located in Windsor, Colorado.  Logically, and as plainly stated in a previous Nevada case:

> [J]ust as a Florida judge may well prefer to send a Nevada casino bankruptcy to Nevada even if venue were proper in Florida, this court sees strong reason to send a Chapter 11 case involving solely a Florida nightclub to Florida. It is the judge in that community that is in the better position to judge whether the particular enterprise 'is a good candidate for reorganization ... in the economic community in which it operates.'" *Id.; see also In re Consol. Equity Prop., Inc.,* 136 B.R. at 267 (stressing that court should consider "any local interests" when determining venue). Where a debtor's assets consist solely of real property, as with Debtor in this case, courts "have held that transfer of venue is proper because '[m]atters concerning real property have always been of local concern and traditionally are decided at the situs of the property.'" *In re Enron,* 284 B.R. at 392 [internal citations omitted]

*B.L. of Miami*, 294 B.R. at 332.

47.    As in *In re Municipal Corrections, LLC,* this means transferring venue to Colorado should occur, because that is where the principal purported asset of the Debtor is located.

### 5.    Economic Administration of the Estate.

48.    This factor is the most important in the analysis. U.S. Eagle seeks this relief on an expedited basis, within one week after the Petition Date.  Venue should be transferred now, before this Court is required to expend judicial resources dealing with the requirements of any chapter 11 case on its docket, and well before any other party is required to expend resources in that endeavor. (*Compare with In re Bestwall LLC*, 605 B.R. 43, 52 (Bankr. W.D.N.C. 2019) ("Most importantly, retaining the case in this district best promotes the efficient administration of Bestwall's estate because, among other things, it avoids the superfluous administrative expenses and delay associated with transferring a case that has been pending in this district for over a year (by the time of the hearing on the Motion) to a court in another district.")).  If accomplished swiftly, transferring venue will not disrupt the bankruptcy process.

SPENCER FANE LLP
Attorneys at Law
Las Vegas

LV 6696609.1

49.     Maintaining these proceedings in Nevada will require parties in interest to make numerous trips to Nevada, while the case proceeds.  Most creditors are located in Colorado.  It would serve the efficiencies of the parties if the case is administered in Colorado, rather than in Nevada, and it would certainly be more convenient.  Colorado parties would not have to pay the Court's admission fees and associate with local counsel.  All relevant factors point to a need to transfer this matter to Colorado.

50.     While it is true the Debtor is a Nevada-formed entity, other courts have correctly found that fact, standing alone, is insufficient to prevent venue from being transferred to the jurisdiction where most ties exist.  See, *In re Municipal Corrections, LLC*, 2012 WL 6737509 at *11 ("While venue is technically proper in Nevada based on Debtor's incorporation, it does not make it fair to all the numerous Georgia parties in interest to have the case in such a distant district. The Court finds that the interest of justice is best served by transferring this case to Georgia.").

**6.     Necessity for Ancillary Administration if Liquidation Should Result.**

51.     Should liquidation of the Debtor occur, the task would be rendered more difficult by having this Case remain in the Nevada Bankruptcy Court.  The situs of the Project is far away, and the vast majority of the Debtor's creditor body is located in Colorado. A chapter 7 trustee would be forced to hire counsel in Nevada and likely, Colorado as well.  Physical site visits would be rendered more burdensome, difficult and complicated.  Important issues of Colorado law would be implicated in any liquidation, given the pendency of the State Court Litigation and the issues surrounding the Debtor's alleged malfeasance.  Any valuation issues pertaining to potential sale would require Colorado experts and would be better handled by the Colorado bankruptcy court, which is more attuned to the local community considerations and values than is possible in Nevada. While it is early in the proceedings, this factor also tilts in favor of grating this Motion.

**B.     TRANFER OF VENUE IN THE INTERESTS OF JUSTICE.**

52.     Transferring venue of this Case to Colorado is also warranted when considering whether a change in venue would be in the interests of justice, the second prong of the §1412 analysis. "The 'interest of justice' analysis relates . . . to the efficient functioning of the courts, not to the merits of the underlying dispute. *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 221 ([7th

SPENCER FANE LLP
Attorneys at Law
Las Vegas

Cir. 1986).  If a transfer of venue would promote efficient estate administration, judicial economy, timeliness, and fairness, then those standards are satisfied, and a transfer of venue should occur. *In re Enron,* 274 B.R. 327, 346 (Bankr.S.D.N.Y.2002); *B.L. of Miami,* 294 B.R. at 334 (citing *Enron*).

53.     Many of the considerations discussed above herein compliment the analysis with respect to the interests of justice.  This case is, for all intent and purposes, a Colorado case which was purposefully filed by the Debtor in this jurisdiction in an effort to gain the advantage of being far-removed from its creditor body and the spotlight which scrutinize its actions.   This Court should not allow itself to be used in such an untoward manner, and allowing the Case to remain in Nevada would surely frustrate the purpose of the Bankruptcy Code and rationale for why proper venue is an important and proper consideration when a debtor decides to voluntarily file a chapter 11 petition.

54.     The facts are that the Debtor, a party to whom U.S. Eagle never made a loan, appears to be the recipient of an unrecorded avoidable transfer which purports to give it title to the Dome Property, rather than the party with whom U.S. Eagle did business, Future Legends.

55.     But for the Lease and unrecorded Deed, the Dome parcel would be subject to the Order Appointing Receiver issued in the State Court Litigation.  As we know, the Debtor filed its case to avoid the imminent rejection of the Lease, a matter set for hearing the day after the Debtor filed its (evening) petition.  The chronology renders it inescapable to conclude in any way other than that these actions have been taken by Katofsky to evade creditors, to avoid having the Lease transaction scrutinized by the State Court, to render it more difficult for the Receiver to perform his duties, and to retain control over the Dome.

56.     The facade is easily pierced, and exposes the lengths undertaken in order to retain control over the flailing Project. Katofsky has caused the Debtor to seek safe harbor in this honorable Court when it has no ties to Nevada, other than that Nevada is the state in which the Debtor was formed. Katofsky likely chose this venue as a preferred jurisdiction, close enough to where he lives- California - yet far removed from the dispute at hand, far enough to chill creditor participation, and far enough away so that no party to the State Court Litigation could be compelled

SPENCER FANE LLP
Attorneys at Law
Las Vegas

1   to attend court proceedings in this Case via subpoena.   The Debtor is, however, undeniably

2   entrenched in Colorado and considerations of comity favor transferring venue to Colorado.

3       57.   The Colorado Bankruptcy Court lies in Denver, Colorado – and the project, located

4   in Windsor, Colorado, is less than 100 miles from the Court.  Creditors and participants in the State

5   Court Litigation would not be nearly as burdened by participating in this matter once moved to

6   Colorado, and this Court would not be forced to make important decisions pertaining to Colorado

7   state law matters, outside the reach of the subpoena power of potential witnesses having knowledge

8   related to the Debtors' actions and the Project.

9       58.   Despite its connections to Colorado, the Debtor seeks the protection of the

10   Nevada Bankruptcy Court, a state in which not a single one of the Debtor's creditors are located

11   and where the Debtor has not performed any relevant services or engaged in any business

12   operations. Administration of the Case in the Debtor's chosen forum will require U.S. Eagle, along

13   with the Debtor's other Colorado creditors, to protect their interests in a state some 800 miles from

14   where these creditors contracted with the Debtor and where services were performed.

15       59.   Consequently, transfer of the Bankruptcy Case from the Nevada Court to the

16   Colorado Court promotes and is in the best interest of justice.  In *In re Grand Dakota Partners,*

17   *LLC*, 573 B.R. 197 (Bankr. W.D.N.C. 2017), the Western District of North Carolina Bankruptcy

18   Court confronted a similar scenario.  The *Grand Dakota* Court opined that:

19       Retaining venue in North Carolina would make it difficult and
        expensive for parties in interest other than the Debtors to participate

20       in these two cases. The vast majority of non-insider creditors and
        contract counterparties are located in North Dakota. If this case were

21       to remain in North Carolina, distance and cost likely would unfairly
        reduce creditor participation in the reorganization process.

22       Although the Debtors' principal places of business are in North
        Carolina, their meaningful assets and business activities are in

23       North Dakota. Accordingly, transferring these cases to North
        Dakota also is in the best interest of justice pursuant to 28 U.S.C. §

24       1412.

25   *Id.*, at 202.

26       60.   Here, the sole asset to be administered (if the Debtor even owns an asset, which

27   ownership is dubious, at best) is located in Colorado.  Colorado law will govern the disposition of

28   these assets, the resolution of any disputes related thereto, as well as any disputes related to the

Debtor's creditor claims, including but not limited to the claim of U.S. Eagle.  Potential avoidance (or dismissal) actions arising from the Debtor's bad faith prepetition receipt of assets from Future Legends, LLC (and other yet unknown transfers) will likely involve a vast majority of Colorado companies and individuals.  The Nevada Court would be required to familiarize itself with the relevant Colorado law and address the issues which will inevitably arise.  Conversely, the Colorado Court is already familiar with the relevant law and is better positioned to timely and efficiently handle the administration of the estate in this case.  This will best serve the interests of the Debtor and creditors and save the estate considerable time and money. *See In re Rehoboth Hosp.*, LP, No. 11-12798 KG, 2011 WL 5024267, at *5 (Bankr. D. Del. Oct. 19, 2011) (transferring venue to Texas where "the overwhelming majority, in number, of the remaining secured and unsecured creditors are located in Texas.").

61.    Moreover, to the extent witnesses are necessary to the administration of the estate, it is likely that most will be beyond the subpoena power of this Court, as none of the parties, including the Debtor, reside in or are located in Nevada.  As a result, the parties to this action will likely be required to incur significant costs to participate in this Case, and to obtain the testimony of witnesses located in Colorado and elsewhere.

62.    As the *B.L. of Miami* Court aptly noted "Creditors would be geographically distant and if they wanted to participate would need to retain local counsel. There is little doubt that distance and cost would unfairly reduce participation in the reorganization process and that participation is a fundamental predicate of Chapter 11." *See* 11 U.S.C. § 1109(b)." *B.L. of Miami*, 294 B.R. at 33

63.    The inconvenience and prejudice to the Colorado creditors of venue remaining in Nevada is similarly substantial, especially considering the Debtor's superficial connection to its chosen forum.  Consistent with this persuasive precedent, transfer of venue to the Colorado Court is in the best interest of justice.

64.    The Debtor's choice of venue appears to be nothing more than a thinly veiled attempt to discourage the Colorado creditors' participation in the proceedings by making things as inconvenient and expensive as possible.

SPENCER FANE LLP
Attorneys at Law
Las Vegas

LV 6696609.1

65.    For the reasons stated above, in the interests of justice and for the convenience of the parties and witnesses, venue of the Bankruptcy Case should be transferred to the Colorado Court pursuant to 28 U.S.C. § 1412 and Fed. R. Bankr. P. 1014(a)(1).

WHEREFORE, U.S. Eagle Federal Credit Union respectfully requests that this Court grant its Emergency Motion for Transfer of Venue Pursuant To U.S.C. § 1412 and Fed. R. Bankr. P. 1014(A)(1), and for any such other and further relief as this Court Deems just and proper.

DATED this 22nd day of October 2024.

**SPENCER FANE LLP**

 /s/ Richard F. Holley
Richard F. Holley, Esq. (NBN 3077)
R. McKay Holley, Esq. (NBN 15964)
300 South Fourth Street, Suite 1600
Las Vegas, Nevada 89101
Phone: 702.408.3400 | Fax: 702.408.3401
-and-
David M. Miller (CO Bar No. 17915)
Pro Hac Vice Pending
1700 Lincoln Street, Suite 2000
Denver, Colorado 80203
Phone: 303.839.3800 | Fax:303.839.3838
Email: rholley@spencerfane.com
        mholley@spencerfane.com
        dmiller@spencerfane.com

*Attorneys for U.S. Eagle Federal Credit Union*

1

## <u>CERTIFICATE OF SERVICE</u>

2      I hereby certify that I am an employee of Spencer Fane LLP and that, on the 22nd day of

3   October 2024, I caused to be served a true and correct copy of EMERGENCY MOTION OF U.S.

4   EAGLE FEDERAL CREDIT UNION FOR TRANSFER OF VENUE PURSUANT TO U.S.C. §

5   1412 AND FED. R. BANKR. P. 1014(a)(1) in the following manner:

6      ☒      (ELECTRONIC SERVICE) Under Local Rule 5005 of the United States

7   Bankruptcy Court for the District of Nevada, the above-referenced document was electronically

8   filed on the date hereof and served through the Notice of Electronic Filing automatically generated

9   by that Court's facilities.

10      ☐      (UNITED STATES MAIL) By depositing a copy of the above-referenced

11  document for mailing in the United States Mail, first-class postage prepaid, at Las Vegas, Nevada,

12  to the parties listed on the attached service list, at their last known mailing addresses, on the date

13  written above.

14      ☐      (OVERNIGHT COURIER) By depositing a true and correct copy of the above-

15  referenced document for overnight delivery via Federal Express, at a collection facility maintained

16  for such purpose, addressed to the parties on the attached service list, at their last known delivery

17  address, on the date written above.

18      ☐      (FACSIMILE) By serving a true and correct copy of the above-referenced

19  document via facsimile, to the facsimile numbers indicated, to those listed on the attached service

20  list, and on the date written above.

21



22      /s/ Olivia Swibies
An employee of Spencer Fane LLP

23

24

25

26

27

28

SPENCER FANE LLP
Attorneys at Law
Las Vegas

LV 6696609.1