**Spencer Fane LLP**
Richard F. Holley, Esq.
Nevada Bar No. 3077
rholley@spencerfane.com
R. McKay Holley, Esq.
Nevada Bar No. 15934
mholley@spencerfane.com
300 South Fourth Street, Suite 1600
Las Vegas, Nevada 89101
Telephone: 702.408.3400
Facsimile: 702.408.3401
-and-
David M. Miller (CO Bar No. 17915)
Admitted *Pro Hac Vice*
dmiller@spencerfane.com
1700 Lincoln Street, Suite 2000
Denver, Colorado 80203
Telephone: 303.839.3800
Facsimile: 303.839.3838

Attorneys for
U.S. Eagle Federal Credit Union

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| In re:<br><br>FUTURE LEGENDS 5, LLC,<br><br>Debtor. | Case No. 24-51031-hlb<br>Chapter 11<br><br>DATE OF HEARING: March 28, 2025<br>TIME OF HEARING: 1:30 p.m.<br><br>Judge: Hon. Hilary L. Barnes |

**DECLARATION OF ROSS W. BUSBY IN SUPPORT OF U.S. EAGLE FEDERAL CREDIT UNION'S MOTION TO DISMISS CHAPTER 11 CASE UNDER 11 U.S.C. § 1112 [DOC. 196]**

I, Ross W. Busby, do hereby state under penalty of perjury as follows:

1. I am over the age of 18 and am mentally competent, I have personal knowledge of the facts in this declaration except for those matters stated on information and belief, and as to those matters, I believe them to be true based on my investigation and review of business records of U.S. Eagle Federal Credit Union ("U.S. Eagle") kept and maintained in the ordinary course of business. If called upon to testify, I could and would do so.

2. I make this declaration in support of U.S. Eagle's Motion to Dismiss Bankruptcy Chapter 11 Case Under 121 U.S.C. § 1112.

**Career and Qualifications**

3. Regarding my professional background, I began my career in commercial lending in 1996 with Norwest Bank, which was later acquired by Wells Fargo. During the first thirteen (13) years of my career, I was a credit analyst and manager of commercial lending in Texas.

4. I next worked at Bank of the West from 2006 to 2018 where I was head of commercial banking in New Mexico.

5. In this role, I largely worked in middle market loans ranging in amount between $10 million and $100 million.

6. In May 2018, I moved to U.S. Eagle where I became and still serve as the head of U.S. Eagle's commercial banking group and Senior Vice President. My role includes overseeing and developing U.S. Eagle's commercial lending business.

7. U.S. Eagle does a significant amount of lending relating to United States Department of Agriculture ("USDA") guaranteed loans, and I oversee that portfolio. In the last seven (7) years, U.S. Eagle has extended in excess of $200,000,000 in USDA guaranteed loans, making it one of the largest volume USDA-backed lender in the country. Even so, no single USDA guaranteed loan may exceed $25,000,000.

8. On one of my primary duties at U.S. Eagle is to review and/or underwrite all USDA loans for approval by the loan committee at U.S. Eagle. As such, I have considerable knowledge of our USDA guaranteed loans.

9. In producing USDA Loans, U.S. Eagle works with Madison One.[1] Madison One has significant experience in government lending specifically with respect to SBA 7(a), SBA 504 and USDA guaranteed loans.

10. When these loans are being considered for SBA and/or USDA approval, Madison One and its representatives, not the potential lender (such as U.S. Eagle), serve as the direct contract point between the potential borrower and the USDA or the SBA (or both), as the case may be.

**U.S. Eagle Loans to Future Legend Entities, But Not the Debtor.**

11. U.S. Eagle is the senior lender on a 118-acre sports complex located in Windsor, Colorado, often referred to as the Future Legends Project (the "Project"). U.S. Eagle has made six (6) secured loans (individually, each "Loan"; and together, the "Loans") to Future Legends entities related to the Future Legends Project, including extending Loans to Future Legends, LLC; Future

[1] See, Busby Turnover Declaration, ¶¶10-17.

Legends 1, LLC; and Future Legends 4, LLC (collectively, "Borrowers" or "Future Legend Entities"). Three (3) of those Loans are partially guaranteed by the UDSA, and all Loans have been personally guaranteed by Jeff Katofsky ("Mr. Katofsky") and the Katofsky Family Trust ("Guarantors").

12. Katofsky manages and controls all Future Legend Entities named as Borrowers above. He also manages and controls the Debtor. See, Petition for Relief, (ECF. No. 1); Borrower's Certificates described below).

13. As of March 18, 2025, the amounts due and owing on the Loans (combined) is no less than $50,617.867.23.

14. All Loan documents were signed by Mr. Katofsky, in his capacity as Manager of the respective Borrower, and as guarantor of each of the Loans.

15. Future Legends, LLC ("Future Legends") is the record owner of the real property and Dome located thereon having an address of 1090 Future Legends Drive, Windsor, Colorado 80550 ("Dome Property"), not the Debtor.

16. As set forth in the deed records of Weld County, Colorado, Future Legends became the owner of the Dome Property pursuant to a Colorado General Warranty Deed dated May 28, 2019, which was recorded with the Clerk and Recorder of Weld County on June 14, 2019, at 4497549. A copy of the Warranty Deed is attached hereto as Exhibit A.

17. Of the six Loans, three Loans related to the Dome Property ("Dome Property Loans").

18. All Dome Property Loans were made by U.S. Eagle to its owner of record and Borrower, Future Legends.

19. Additionally, in connection with each of the Dome Property Loans, Future Legends and U.S. Eagle entered into a Loan and Security Agreement. The Loan and Security Agreements were signed by Mr. Katofsky in his capacity as Manager of Future Legends.

20. As of March 18, 2025, the amounts due and owing on the three (3) Dome Property Loans totaled $20,701,737.51, excluding legal fees and costs is as follows:

| **Loan Number** | **Borrower** | **Guarantors** | **Amount Due (March 18, 2025)** |
|---|---|---|---|
| 6610721-0001 | Future Legends LLC | Jeff C. Katofsky; Katofsky Family Trust; U.S. Department of Agriculture | $15,028,506.47 |

| | | | |
|---|---|---|---|
| 6610721-0002 | Future Legends LLC | Jeff C. Katofsky; Katofsky Family Trust; U.S. Department of Agriculture | $479,930.88 |
| 6610721-0003 | Future Legends LLC | Jeff C. Katofsky; Katofsky Family Trust | $5,193,300.16 |
| | | | **Total: $20,701,737.51** |

21. Copies of the Loan and Security Agreements pertaining to the three (3) Dome Property Loans are attached hereto as Exhibits B, C, and D.

22. In connection with each of the Dome Property Loans Future Legends granted to U.S. Eagle a Deed of Trust, Security Agreement, Financing Statement, and Assignment of Rents ("Deeds of Trust") on the Dome Property, and those documents were duly recorded with the Weld County, Colorado Clerk and Recorder.

23. Copies of the three (3) duly recorded Deeds of Trust securing repayment of each of the three (3) Dome Property Loans are attached hereto as Exhibits E, F, and G,

24. The First Dome Property Loan (Loan No. 6610721-0001) was a USDA guaranteed loan ("First Dome Property Loan"). The Second Dome Property Loan (6610721-0002) ("Second Dome Property Loan") and Third Dome Property Loan (6610721-0003) ("Third Dome Property Loan") were made directly to Future Legends by U.S. Eagle as lender.

25. In connection with each of the Dome Property Loans and in each respective Dome Property Loan and Security Agreement, Future Legends represented and Covenanted in Article Five, Sections 5.01 (J) and (K) as follows:

> (J) Mergers, Consolidations and Sales. Borrower will not be a party to any merger or consolidation with, or purchase or otherwise acquire all or substantially all of the assets or member certificates of any class of, or any partnership, membership or joint venture interest in, any other Person, or sell, transfer, convey or lease all or any substantial part of its assets, or sell or assign, with or without recourse, any Accounts Receivable, except with the prior written consent of the Lender.
>
> (K) Self-Dealing. Borrower shall not purchase, acquire or lease any property from, or sell, transfer or lease any property to (a) any Affiliate, (b) any officer, director or shareholder of Borrower or any Affiliate, (c) any of the Guarantors or (d) any member of the immediate family of any of the foregoing, except (i) on terms comparable to the terms which would prevail in an arms-length transaction between unaffiliated third parties; (ii) and with the prior written consent of Lender and RBS.

Exhibits B, C, and D, pp. 13.

26. Prior to allegedly conveying or leasing any of its assets to the Debtor, U.S. Eagle did not receive any request from Future Legends for U.S. Eagle or the USDA to provide written consent to such transfer.

27. To date, U.S. Eagle has not provided written consent for Future Legends to effectuate a change in Dome Property ownership from Future Legends to the Debtor.

**Incomplete Discussion of and Gloss-Over of Dome Ownership Issue**

28. I have read the Declaration of Mr. Katofsky, submitted in his opposition to the Motion to Dismiss ("Katofsky Declaration"). [ECF. No. 235-1].

29. In the Katofsky Declaration, he concludes the Debtor owns the Dome Property, (¶ 11). He further states that "[I]in the Spring of 2022, an issue arose regarding USDA lending requirements. As a result, the resolution to this issue was to have Future Legends, LLC transfer the Dome Property to the Debtor, Future Legends 5, LLC. ***See***, *Exhibits* 4-13 *referenced herein below*." (Katofsky Declaration, 12).

30. However, Exhibits 4-13 do not fully recite what occurred with respect to Dome ownership, and the potential need for Future Legends to transfer the Dome Property to the Debtor. Exhibits 4-13 to the Katofsky Declaration recites pre-closing events that curiously stops on June 28, 2022, weeks before the Stadium Loan format was finalized by the USDA.

31. The relevant post-June 28, 2022, emails on this subject are contained in "Exhibit A" to the *Declaration of Chris Balestrino in Support of The Reply To The Emergency Motion of U.S. Eagle Federal Credit Union For Transfer of Venue Pursuant to 28 U.S.C. § 1412 and Fed.R.Bankr.P. 1014(a)(1) And In Response To the Debtor's Opposition* {ECF. No. 98] ("Balestrino Declaration").

32. Exhibit A to the Balestrino Declaration reflects that on July 8, 2022, the USDA reversed its course and decided to proceed with the Stadium Loan without Future Legends being required to transfer the Dome Property to the Detor. That information was conveyed to Mr. Katofsky. A copy of those emails are attached hereto as <u>Exhibit H</u>.

33. In particular, Mr. Kevin Scully, Regional Director of the USDA National Office advised Mr. Balestrino that:

> *Hey Chris,*
>
> *Last I've heard is we're going to present it with FL1 being the sole borrower. I'm changing our evaluation and documentation accordingly to go in that direction.*

*See*, Exhibit H; p.9.

34. I have personal knowledge of the fact that Future Legends is not a co-borrower on the Stadium Loan because U.S. Eagle is the Lender to Future Legends I, LLC on the Stadium Loan, and U.S .Eagle maintains the records related to the Stadium Loan in the ordinary course of business.

35. I also confirmed this admission because the Katofsky Declaration, at ¶7(b), specifically states Future Legends 1, LLC is the owner "of the approximately four-acre parcel that comprises the professional stadium known as the TicketSocket Stadium, otherwise referred to as Lot 2. The stadium is approximately 60% complete; however, this parcel is not in use. The lender on the professional stadium is US Eagle Federal Credit Union."

36. Less than one year after the Stadium Loan occurred and on June 15, 2023, U.S. Eagle made the Second Dome Property Loan to Future Legends. I served as the U.S. Eagle loan officer on the Second Dome Property Loan and have personal knowledge regarding the facts and circumstances surrounding the Second Dome Propety Loan.

37. Then, on November 2, 2023, Future Legends closed on the Third Dome Property Loan.

38. I served as the U.S. Eagle loan officer on the Third Dome Property Loan and have personal knowledge regarding the facts and circumstances surrounding the Third Dome Propety Loan.

39. Mr. Katofsky executed all Second Dome Property Loan documents and Third Dome Property Loan documents on behalf of Future Legends and himself (as guarantor). All Second Dome Property Loan Documents and Third Dome Property Loan documents reflect the owner of the Dome Property is Future Legends. *See*, Exhibits C and D.

**Manager Certificates and Owner Affidavits**

40. In connection with both the Second Dome Property Loan and Third Dome Property Loan, Mr. Katofsky not only signed the Deeds of Trust, pledging the Dome Property to secure repayment for the Second Dome Property Loan and the Third Dome Property Loan, Mr. Katofsky executed Manger Certificates, wherein he represented that Future Legends possessed the ability to deliver the Second and Third Dome Property Loan and Security Agreements to U.S. Eagle, along with the Term Note, the Assignment of Rents and Deed of Trust relating to the Dome Property. See, Exhibit C (Exhibit 1 to Exhibit C; pp.160-163 and Exhibit D (Exhibit 1 to Exhibit D; pp. 160-163).

41. At closing on both the Second Dome Property Loan and the Third Dome Property Loan, Mr. Katofsky executed a sworn "Owner's Affidavit.". Therein, Mr. Katofsky represented under oath that:

- Future Legends is the Owner of the Premises described in "Title Commitment No. 5134591".
- That there are not any unrecorded mortgages, conditional bills of sale, retention of title agreements, security agreements, agreements not to sell or encumber, financing statements, or personal property leases, which affect the Premises or which affect any fixtures, appliances, or equipment no installed in or on the Premises.
- In turn, Title Commitment No. 5134591 insured title to the Dome Property.

A copy of the Owner's Affidavit is attached hereto as Exhibit J, and a copy of Title Commitment No. 5134591 is attached hereto as Exhibit K..[2]

42. While Mr. Katofsky made several handwritten changes to the Owner's Affidavit, no change was made to reflect that as of that date, the Dome Property had been transferred to the Debtor by virtue of the 2022 (secret) Purchase and Sale Agreement.

43. When Future Legends closed on the Third Dome Property Loan Mr. Katofsky again executed an Owner's Affidavit ("Second Owner's Affidavit"), once again representing that Future Legends was the owner of the Dome Property (the Premises described in Title Commitment No. 5156647), and represented that there were not any unrecorded agreements affecting the Dome Property. A copy of Second Owner's Affidavit is attached hereto as Exhibit L, and a copy of Title Commitment No. 5134591 is attached hereto as Exhibit M.

44. The executed Loan and Security Agreements relative to the Dome Property Loans are kept by U.S. Eagle in the ordinary course of business, as are copies of the Deeds of Trust and all Title Policy documents executed at closing and related thereto.

45. In determining whether to make the Second and Third Dome Property Loans to Future Legends, U.S. Eagle reasonably relied upon the representations made by Katofsky regarding that the Dome Property was owned by Future Legends.

**Pre-Petition Events and State Court Receivership**

46. Prior to the bankruptcy filing, the Debtor's affiliates Future Legends, LLC; Future Legends 1, LLC; and Future Legends 4, LLC were embroiled in litigation in Weld County, Colorado ("State Court Litigation").

[2] The Dome Property is the "Premises" described in the referenced Title Commitment.

47. I am familiar with the State Court Litigation based upon U.S. Eagle's participation therein, and based upon my job duties, which include reviewing the pleadings in the State Court Litigation and engaging with U.S. Eagle's counsel with respect to seeking and receiving legal advice therein on behalf of U.S. Eagle.

48. The State Court Litigation now consists of three (3) consolidated lawsuits, Case No.:2023CV03094 (consolidated with Case No. 2024CV30033; Case No. 2024CV30139; and Case No. 2024CV30470). The Debtor is not a party to the State Court Litigation.

49. On August 30, 2024, U.S. Eagle filed in the State Court Litigation its Omnibus Answer and Verified Third-Party Complaint against certain of the Future Legends Entities that were debtors on loans made by U.S. Eagle. A copy of that document is attached hereto as Exhibit N.

50. Therein, U.S. Eagle sued the Future Legends Entities and the Guarantors, based on those existing defaults under the U.S. Eagle loan documents, and U.S. Eagle sought to foreclose its Deeds of Trust, secured by three parcels of real property that constitute the core of the Future Legends Project (including the Dome Property).

51. On September 3, 2024, the Court in the State Court Litigation entered its Order Appointing Receiver Pursuant to Contract and C.R.C.P. 66 (the "Receivership Order"), finding cause to do so in that U.S. Eagle had made a prima facie showing of a right to the property subject to the Deeds of Trust and that the assets, rents, and profits that are the subject of its security agreements were in danger of being materially lost or damaged. *See* Objection to Motion for Turnover, Exhibit C [ECF No. 55]. A copy of the Receivership Order is attached hereto as Exhibit O.

52. Michael Staheli of Cordes & Company, P.C. (the "Receiver"), was appointed to take physical possession of, manage, operate, and protect certain real and personal property defined in the Receivership Order, including the Dome Property located at 1090 Future Legends Drive, Windsor, Colorado 80550.

53. After his appointment, the Receiver advised me the Debtor and Future Legends were for the first time asserting the Debtor was the owner of the Dome Property by virtue of the 2022 Purchase and Sale Agreement, and had leased it back to Future Legends, LLC by a Lease dated August 1, 2024.

54. The Receiver swiftly determined the Lease was a sham, was for below-market rent (payable in arrears), and that the Lease had already been breached, by virtue of the failure to carry

the insurance required by the Lease. As a result, the Receiver filed in the State Court Suit an Emergency Motion to Reject Lease. See, Exhibit P, attached hereto.

**Post-Petition Failure To Pay Xcel And Second Emergency Protective Advance Payment by U S. Eagle**

55. One ground for U.S. Eagle seeking the immediate appointment of the Receiver in the State Court Litigation related to the fact that in August 2024 it learned that Future Legends, LLC failed to pay the utility bills associated with the Dome Property.

56. U.S. Eagle discovered this fact by happenstance, when Jaco Contractors, the former general contractor on the Future Legends Sports Complex, sent a picture of a disconnect notice it found posted at the Dome Property by Xcel Energy ("Xcel"). The notice advised that power to the Dome was to be disconnected that very day. U.S. Eagle later learned that the Xcel bill had not been paid by Future Legends, LLC, in months.

57. U.S. Eagle immediately rushed to action, and was forced to make a protective advance on its outstanding loans in the amount of $139,752.18, so as to prevent the catastrophe of possible Dome deflation.

58. After the Receiver was appointed, Future Legends, LLC filed a "*Forthwith Motion for Briefing Schedule, Pursuant to Colo. R. Civ. P. 121, Sec. 1-15(2), for Future Legends to Oppose the Verified Motion for Ex Parte Appointment of Receiver and Granting Leave to File a Motion to Dismiss the Receiver and Request an Evidentiary Hearing*." In a short and terse Order, Judge Shannon Lyons denied that Motion outright, noting that the Future Legend entities had jeopardized the integrity of the Dome Property by its prolonged defaults and had created material risks of damage of the Dome Property. A copy of that Order is attached hereto as Exhibit Q.

59. It is noteworthy that pursuant to the Sham Lease, Future Legends, LLC (as alleged tenant) is required to pay the utilities associated with the Dome Property, including but not limited to the monthly amounts due to Xcel. However, Future Legends, LLC has failed to fulfill its obligations under the Sham Lease, and that failure has continued post-petition.

60. On or about February 3, 2025, the Receiver was notified by Xcel once again that the power to the Dome Property would be disconnected for failure to pay the amounts due. According to the Xcel invoices, its utility bill was (at the time) past due for December 2024, as well as January and February 2025. Xcel advised that absent receipt of the past due amount by February 25, 2025, power to the Dome Property would be disconnected.

61. On February 19, 2025, after Xcel advised no further payment had been received, counsel for U.S. Eagle, Richard Holley, emailed Debtor's counsel to advise of the immediate need for action.

62. I received copies of these emails in my capacity as U.S. Eagle Senior Vice President of Business Services and Lending, which include, but are not limited to, monitoring the Dome Property Loans, events in the Debtor's Case, and procuring legal advice for U.S. Eagle with respect to the Debtor's Case.

63. In his email, Mr. Holley advised Ms. McPherson as follows:

> Jeanette,
> Good morning. I want to bring a matter to your attention that needs immediate action. I am advised that the utility payment for the Dome Property has yet to be paid. I understand that there have been communications with Mr. Katofsky over the past couple of weeks regarding the importance of this payment. As of today, it remains unpaid. If not paid and given the consequences of loss of utilities and collapse of the Dome, if payment is not received by the utility company on or before February 24, the Receiver will advance the payment. The outstanding utility bill is in the amount of $59,859.41. I am happy to discuss. Thank you.

A copy of that email is attached hereto as Exhibit R.

64. Neither the Debtor nor its counsel responded to Exhibit R.

65. After confirming that no payment was made to Xcel by the February 25, 2025, payment deadline the Receiver emailed the Debtor, stating in pertinent part that "Xcel Energy is scheduling a termination of electrical and gas service for the Future Legends Dome. If the Receiver and the secured creditor do nothing at this point, your unwillingness to pay the utility expenses of the Dome would result in catastrophic, significant damage to the Dome and the adjoining clubhouse building." A copy of that email and the Debtor's response, asserting it thought Xcel was being paid by U.S. Eagle because of Mr. Holley's email (Exhibit S), is attached hereto as Exhibit S.

66. Once again, and in order to avoid deflation of the Dome Property post-petition and on March 1, 2025, I authorized U.S. Eagle to make a second protective advance of $59,859.01 to Xcel.[3] A copy of the proof of payment is attached hereto as Exhibit T.

**NSF Checks for February and March, 2025 and Failure To Comply With 11 U.S.C.§ 362(d)(3)**

[3] U.S. Eagle intends to seek allowance and payment of an administrative expense pursuant to 11 U.S.C. § 503(b) as a result of making the second protective advance.

67. Because the Debtor failed to file a confirmable plan of reorganization within 90 days of the petition date, U.S. Eagle has been tendered payments at the nondefault rate of interest, as required by 11 U.S. C. § 362(d)(3) ("Interest Payments").

68. None of those payments have been sent by the Debtor via its DIP Account. Instead, those payments appear to have been made from a Future Legends bank account.

69. February 2025, Interest Payments were received from non-debtor Future Legends. While the checks representing the Interest Payments were dated February 3, 2025, they were not received until the week of February 17, 2025. U.S. Eagle deposited the Interest Payments checks with a restrictive endorsement that each of the Interest Payments checks were being negotiated under protest and with a reservation of all rights.

70. On March 3, 2025, U.S. Eagle was notified that one of those checks, in the amount of $106,347.22 was returned for insufficient funds ("NSF Check").

71. Debtor's counsel was notified that same day that one of the February Interest Payment was returned for insufficient funds. No response to that notification was been forthcoming.

72. I have personal knowledge of this chronology because I was involved in reviewing the mail and NSF notices pertaining to the referenced NSF Check.

73. U.S. Eagle redeposited the NSF Check on March 4, 2025, with the hope that in light of the notification to Debtor's counsel, it would clear. However, it has again been returned for insufficient funds. A copy of the returned NSF Check is attached hereto as Exhibit V.

74. Further, on March 17, 2025, U.S. Eagle received three (3) checks to U.S. Eagle representing the amount due by the Debtor for its March 2025, §362(d)(3) payments.

75. On March 20, 2025, the March checks sent by Future Legends were returned as NSF (March NSF Checks"). A copy of the March NSF Checks are attached hereto as Exhibit V.

I declare under penalty of perjury under the laws of the State of Nevada that the foregoing is true and correct.

Executed this 21st day of March, 2025.

Ross W. Busby

*Ross W. Busby, Senior Vice President of Business Services and Lending, U.S. Eagle Federal Credit Union*

**CERTIFICATE OF SERVICE**

I hereby certify that I am an employee of Spencer Fane LLP and that, on the 21st day of March 2025, I caused to be served a true and correct copy of Declaration Of Ross W. Busby In Support Of U.S. Eagle Federal Credit Union's Motion To Dismiss Chapter 11 Case Under 11 U.S.C. § 1112 to Dismiss in the following manner:

☒ (ELECTRONIC SERVICE) Under Local Rule 5005 of the United States Bankruptcy Court for the District of Nevada, the above-referenced document was electronically filed on the date hereof and served through the Notice of Electronic Filing automatically generated by that Court's facilities.

☐ (UNITED STATES MAIL) By depositing a copy of the above-referenced document for mailing in the United States Mail, first-class postage prepaid, at Las Vegas, Nevada, to the parties listed on the attached service list, at their last known mailing addresses, on the date written above.

☐ (OVERNIGHT COURIER) By depositing a true and correct copy of the above-referenced document for overnight delivery via Federal Express, at a collection facility maintained for such purpose, addressed to the parties on the attached service list, at their last known delivery address, on the date written above.

☐ (FACSIMILE) By serving a true and correct copy of the above-referenced document via facsimile, to the facsimile numbers indicated, to those listed on the attached service list, and on the date written above.

/s/ Olivia Swibies
An employee of Spencer Fane LLP